ERIK A. OLSON [8479]
EOLSON@MOHTRIAL.COM
TREVOR C. LANG [14232]
TLANG@MOHTRIAL.COM
**MARSHALL OLSON & HULL, PC**
NEWHOUSE BUILDING
TEN EXCHANGE PLACE, SUITE 350
SALT LAKE CITY, UTAH 84111
TELEPHONE: 801.456.7655

ATTORNEYS FOR DEFENDANT
MCKESSON CORPORATION

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UINTAH COUNTY, UTAH; DUCHESNE COUNTY, UTAH; DAGGETT COUNTY, UTAH; and TRI-COUNTY HEALTH DEPARTMENT;<br><br>      Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA L.P., et al.,<br><br>      Defendants. | **NOTICE OF REMOVAL**<br><br><br>Civil No. 2:18-cv-00585-DBP |

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1331, 1441, 1446, and 1367, Defendant McKesson Corporation ("McKesson") has removed the above-captioned action from the Eighth Judicial District Court for Uintah County, Utah to the United States District Court for the District of Utah.  As grounds for removal, McKesson states:

## NATURE OF REMOVED ACTION

1.  On June 7, 2018, Uintah County, Duchesne County, Daggett County, and the Tri-County Health Department ("Plaintiffs") filed *Uintah Cty., Utah, et al. v. Purdue Pharma L.P.,*

*et al.*, in the Eighth Judicial District Court for Uintah County.  The state court assigned Case No. 180800056 to the action.

2.　　　　The Complaint asserts claims against three groups of defendants.

3.　　　　The first group of defendants consists of Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Teva Pharmaceuticals USA, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Allergan plc f/k/a Actavis plc; Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Watson Laboratories, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Insys Therapeutics, Inc.; and Mallinckrodt LLC (collectively, the "Manufacturer Defendants").  Compl. ¶¶ 53-76.

4.　　　　The second group of defendants consists of McKesson Corporation, Cardinal Health Inc., and AmerisourceBergen Corporation (collectively, the "Distributor Defendants"). Compl. ¶¶ 77-95.

5.　　　　The third and final group of defendants consists of Perry Fine, Scott Fishman, and Lynn Webster (collectively, the "Individual Defendants").  Compl. ¶¶ 96-98.

6.　　　　The Complaint asserts eight causes of action against McKesson and the other Distributor Defendants: violations of the Utah Consumer Sales Practices Act (First Cause of Action); public nuisance (Second Cause of Action); fraud, misrepresentation, and fraudulent concealment (Third Cause of Action); strict products liability (Fourth Cause of Action); negligence (Fifth Cause of Action); negligent marketing (Sixth Cause of Action); civil conspiracy (Seventh Cause of Action); and unjust enrichment (Eighth Cause of Action).  *See* Compl. ¶¶ 744-817.

7.      Although Plaintiffs assert that federal jurisdiction is lacking, Compl. ¶ 50, Plaintiffs' claims against the Distributor Defendants stem from an alleged duty to "inspect, report, or otherwise limit" suspicious orders of prescription opioids, *id.* ¶ 714.  The Distributor Defendants breached that duty by "failing to submit suspicious order reports," Compl. ¶ 716, and by "shipp[ing] millions of doses of highly addictive controlled opioid pain killers into Uintah, Duchesne, and Daggett County" when "[m]any of these orders should have been stopped, or at the very least, investigated as potential suspicious orders," *id.* ¶¶ 726-27.

8.      Because the duties governing reporting and shipping "suspicious" opioid orders arise solely from the federal Controlled Substances Act ("CSA") and its implementing regulations, Plaintiffs plead that alleged violations of federal law form the basis for its claims.

9.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation (JPML) formed a multidistrict litigation (MDL) and transferred opioid-related actions to Judge Dan Polster in the Northern District of Ohio pursuant to 28 U.S.C. § 1407.  *See In re Nat'l Prescription Opiate Litig.*, MDL No. 2804 (J.P.M.L. Dec. 5, 2017), ECF No. 328.  More than 1,000 opioid-related actions are pending in the MDL.

10.     McKesson intends to tag this case immediately for transfer to the MDL.

11.     In accordance with 28 U.S.C. § 1446(a), copies of the docket sheet and all process, pleadings, and orders served on McKesson in the state court action are attached.

## TIMELINESS OF REMOVAL

12.     Plaintiff served the Complaint on McKesson on or after June 22, 2018.

13.     In accordance with 28 U.S.C. § 1446(b), this notice of removal is timely filed within 30 days of service of Plaintiff's Complaint.  *See Murphy Bros., Inc. v. Michetti Pipe*

*Stringing, Inc.*, 526 U.S. 344, 354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

14.       "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal."    28 U.S.C. § 1446(b)(2)(C).

15.       McKesson has not responded to the Complaint in state court.  McKesson's response is not due until September 13, 2018, pursuant to a stipulation between Plaintiffs and McKesson.

## PROPRIETY OF VENUE

16.       Venue is proper in this district under 28 U.S.C. § 1441(a) because the state court where the suit has been pending is in this district.

## BASIS OF REMOVAL

17.       Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1331 because Plaintiffs' claims present a substantial federal question under the CSA, 21 U.S.C. §§ 801, *et seq.*

18.       The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

19.       "Whether a case arises under federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule."  *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002) (internal quotations omitted).

20.      Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc., v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.").[1]

21.      "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568

---

[1] A defendant need not overcome any artificial presumptions against removal or in favor of remand.  In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), the Supreme Court unanimously held that the 1948 amendments to the general federal removal statute, 28 U.S.C. § 1441(a), trumped the Court's prior teachings in *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941), and its antecedents, that federal jurisdictional statutes must be strictly construed against any recognition of federal subject matter jurisdiction, with every presumption indulged in favor of remand.  *Id.* at 697-98 ("[W]hatever apparent force this argument [of strict construction against removal] might have claimed when *Shamrock* was handed down has been qualified by later statutory development. . . . Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, *the burden is on a plaintiff to find an express exception.*") (emphasis added); *see also Exxon Mobil Corp. v Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005) (construing 1990 enactment of 28 U.S.C. § 1367, authorizing supplemental federal subject matter jurisdiction, and holding: "We must not give jurisdictional statutes a more expansive interpretation than their text warrants; but it is just as important not to adopt an artificial construction that is narrower than what the text provides . . . Ordinary principles of statutory construction apply.") (citation omitted).

More recently, a unanimous Supreme Court in *Mims v. Arrow Financial Services, LLC* held: "Divestment of district court jurisdiction should be found no more readily than divestment of state court jurisdiction, given the longstanding and explicit grant of federal question jurisdiction in 28 U.S.C. § 1331."  565 U.S. 368, 379 (2012) (brackets, citations, and internal quotation marks omitted).

U.S. 251, 258 (2013); *see Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (internal quotation omitted).

22.　　　As set forth below, this case meets all four requirements.[2]

23.　　　Although Plaintiffs ostensibly plead some of their theories of recovery against McKesson as state law claims, they base the underlying theory of liability on McKesson's alleged violations of federal law or alleged duties arising out of federal law, specifically the CSA, *i.e.*, that a portion of its otherwise lawful shipments of prescription opioids were unlawful because they were shipped in fulfillment of suspicious orders that McKesson allegedly had a duty to identify, report, and then not ship. Compl. ¶¶ 711-16, 724, 726-27.

24.　　　The source of the asserted legal duty to monitor and report suspicious orders of controlled substances is the CSA, 21 U.S.C. §§ 801, *et seq.*, and its implementing regulations. *See* Compl. ¶ 737 (identifying 21 C.F.R. § 1301.74(b) as source of duty to report suspicious orders to the Drug Enforcement Administration of the United States Department of Justice ("DEA")); *id.* ¶ 740 (summarizing Distributor Defendants' "statutory and regulatory duties to 'maintain effective controls against diversion' and 'design and operate a system to disclose to the registrant suspicious orders of controlled substances,'" as required by 21 U.S.C. §§ 823-24 and the DEA).

---

[2] The substantiality inquiry as it pertains to federal question jurisdiction is distinct from the merits of the case and has no bearing on the strength of Plaintiff's underlying claims. *See Gunn v. Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.").

25.     The source of the asserted legal duty to suspend shipments of suspicious orders is 21 U.S.C. § 823(b) and (e), as interpreted by the DEA.  Specifically, DEA interprets the public interest factors for registering distributors under the CSA, 21 U.S.C. § 823(b) and (e), to impose a responsibility on distributors to exercise due diligence to avoid filling suspicious orders that might be diverted to unlawful uses.  *See Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212-13 (D.C. Cir. 2017) (citing *In re Southwood Pharm., Inc.*, Revocation of Registration, 72 Fed. Reg. 36,487, 36,501, 2007 WL 1886484 (Drug Enf't Admin. July 3, 2007), as source of DEA's "Shipping Requirement").

26.     Plaintiffs' theories of liability against McKesson and other Distributor Defendants, as pled in the Complaint, are predicated on allegations that the Distributor Defendants breached alleged duties under the CSA to implement effective controls to detect and report "suspicious" pharmacy orders for prescription opioids and—crucial to Plaintiffs' claims—to refuse to ship such orders to Utah pharmacies.

27.     Specifically, Plaintiffs plead that McKesson and the other Distributor Defendants violated federal law with, among others, the following allegations:

> a.     "The Defendants had a duty to notice suspicious or alarming orders of opioid pharmaceuticals and to report suspicious orders to the proper authorities and governing bodies including the DEA and the Utah Department of Health."  Compl. ¶ 711.[3]

---

[3] Plaintiffs fail to identify any Utah law or regulation supporting this alleged duty to report suspicious orders to the Utah Department of Health, and there is no state provision analogous to the federal CSA's reporting requirement.  *See infra* note 4.

b.      "The Defendants knew or should have known that they were supplying vast amounts of dangerous drugs in Uintah, Duchesne, and Daggett County that were already facing abuse, diversion, misuse, and other problems associated with the opioid epidemic. [. . .] The Defendants failed in their duty to take any action to prevent or reduce the distribution of these drugs." *Id.* ¶¶ 712-13.

c.      "The Defendants [. . .] had a duty to inspect, report, or otherwise limit the manufacture and flow of these drugs to Uintah, Duchesne, and Daggett County.  The Defendants [. . .] intentionally failed in this duty." *Id.* ¶¶ 714-15.

d.      "The Defendants have displayed a continuing pattern of failing to submit suspicious order reports." *Id.* ¶ 716.

e.      "In 2008, McKesson paid a $13.25 million fine to settle similar claims regarding suspicious orders from internet pharmacies. [. . .] Despite these prior penalties, McKesson's pattern of failing to report suspicious orders continued for many years." *Id.* ¶ 717-18.

f.      "Despite the charges, fines, and penalties brought against the Distributor Defendants in the past, they continued to fail to report suspicious orders or prevent the flow of prescription opioids, including into Uintah, Duchesne, and Daggett County." *Id.* ¶ 724.

g.      "Between the years in question, including 2007 through 2016, the Distributor Defendants have shipped millions of doses of highly addictive

controlled opioid pain killers into Uintah, Duchesne, and Daggett County. [. . .] Many of these orders should have been stopped, or at the very least, investigated as potential suspicious orders." *Id.* ¶ 726-27.

h.    "Upon information and belief, the Defendants did not refuse to manufacture, ship, or supply any opioid medications to any pharmacy in Uintah, Duchesne, and Daggett County from 2007 to the present." *Id.* ¶ 730.

i.    "The DEA has provided briefings to each of the Defendant Distributors and conducted a variety of conferences regarding their duties under federal law," *id.* ¶ 738, including a duty to inform the DEA of suspicious orders and a "statutory responsibility to exercise due diligence to avoid filling suspicious orders." *Id.* ¶¶ 739-40.

j.    "As a result of the decade-long refusal by the Defendant Distributors to abide by federal law, the DEA has repeatedly taken administrative action to force compliance. The United States Department of Justice, Office of the Inspector General, Evaluation and Inspections Divisions, reported that the DEA issued final decisions in 178 registrant actions between 2008 and 2012. The Office of Administrative Law Judges issued a recommended decision in a total of 177 registrant actions before the DEA issued its final decision, including 76 actions involving orders to show cause and 41 actions involving immediate suspension orders." *Id.* ¶ 741.

28.     Plaintiffs do not and cannot identify a state law that specifically requires wholesale pharmaceutical distributors to "inspect, report, or otherwise limit" prescription opioid orders from registered pharmacies.  *Id.* ¶ 714.[4]

29.     The federal question presented by Plaintiffs' claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

30.     *First*, Plaintiffs' state law claims "necessarily raise" a federal question because "resolution of this case turns on issues of federal law." *Evergreen Square of Cudahy v. Wisconsin Hous. & Econ. Dev. Auth.*, 776 F.3d 463, 467 (7th Cir. 2015); *see also N. Carolina ex rel. N. Carolina Dep't of Admin. v. Alcoa Power Generating, Inc.*, 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, where the vindication of a right under state law necessarily turns on some construction of federal law, the claim arises under federal law and thus supports federal question jurisdiction under 28 U.S.C. § 1331.") (alteration and internal quotation omitted); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a

---

[4] None of the Utah laws or regulations that Plaintiffs cite in the Complaint creates an independent obligation to detect, report, or refuse to fill suspicious orders.  *See* Compl. ¶ 706 (citing Utah Admin. Code R156-17b-615(3)(f) (requiring distributors to "be equipped with security measures, systems and procedures necessary to provide reasonable security against theft and diversion of prescription drugs"); Utah Admin. Code R156-17b-615(15) (requiring distributors to "establish, maintain and adhere to written policies and procedures" for the storage and distribution of prescription drugs, including policies for reporting losses or thefts); Utah Admin. Code R156-17b-625 (requiring annual reports to state authorities of the number of opiate doses dispensed and other basic statistical data unrelated to suspicious orders)).  Accordingly, even when Plaintiffs purport to rely on state law, the only source of the alleged duties is the federal CSA.  *See* Compl. ¶ 789 ("Defendants were negligent in disclosing to the County suspicious orders for opioids pursuant to the aforementioned Utah statutes.").

remedy expressly granted by federal law *or if the action requires construction of a federal statute*, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added).

31.     As pled, Plaintiffs' claims against McKesson and the other Distributor Defendants require Plaintiffs to establish that Distributor Defendants breached duties necessarily defined by reference to federal law, by failing to report and stop shipments of otherwise lawful orders of controlled substances to Utah.  *See* Compl. ¶ 711, 713 (Defendants had "a duty . . . to report suspicious orders to the proper authorities" and a "duty . . . to prevent or reduce the distribution of these drugs").  In the absence of analogous duties under Utah law, the Complaint necessarily raises a federal issue—namely, whether McKesson violated the federal CSA.

32.     Although plaintiffs "may avoid federal jurisdiction by *exclusive* reliance on state law," *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (emphasis added), Plaintiffs here allege violations of federal law as the basis for its state-law claims.[5]  Plaintiffs' Complaint

---

[5] It is not necessary for federal jurisdiction that McKesson establish that all of Plaintiffs' counts against it raise a federal question.  Even if Plaintiffs could prove one or more of those counts without establishing a violation of federal law, this Court still has federal question jurisdiction: "Nothing in the jurisdictional statutes suggests that the presence of related state law claims somehow alters the fact that [the] complaints, by virtue of their federal claims, were 'civil actions' within the federal courts' 'original jurisdiction.'"  *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 166 (1997).

Because the Court has original jurisdiction over at least one count here, it has supplemental jurisdiction over Plaintiffs' remaining counts against McKesson and the other Distributor Defendants, which are so related that they "form part of the same case or controversy."  28 U.S.C. § 1367(a).

necessarily raises a federal issue—namely, whether Distributor Defendants violated the CSA by failing to report, prevent, or halt suspicious orders for prescription opioids.

33.     *Second*, this federal issue is "actually disputed" because the parties disagree as to the scope and existence of alleged duties arising under the CSA and whether Distributor Defendants violated duties that, as Plaintiffs plead them, arise only under the CSA.  Indeed, this federal issue is the "central point of dispute."  *Gunn*, 568 U.S. at 259.

34.     *Third*, the federal issue presented by Plaintiffs' claims is "substantial."  "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole."  *Gunn*, 568 U.S. at 260.  Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law."  *Id.* at 260-62 (internal citations omitted).  As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  545 U.S. at 312.

35.     Plaintiffs' theories of Distributor Defendants' liability necessarily require that a court determine the scope and existence of Distributor Defendants' obligations under federal law because regulation of controlled substances is first and foremost federal regulation.  Indeed, Congress designed the CSA with the intent of reducing illegal diversion of controlled substances, "while at the same time providing the legitimate drug industry with a *unified approach* to narcotic

and dangerous drug control."  H.R. Rep. No. 1444, 91st. Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72.

36. Plaintiffs' theories of Distributor Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the national prescription drug supply chain, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [controlled substances] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014) (internal quotation omitted).  The CSA itself notes that "illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people" and that "[f]ederal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic."  21 U.S.C. § 801.  Furthermore, "minimizing uncertainty over" reporting obligations under the CSA "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016) (alteration and citation omitted); *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't Of Envtl. Mgmt.*, 585 F.3d 42, 51 (1st Cir. 2009) (noting, in a case involving state law claims arising out of the implementation of an interstate fisheries compact, "there is a substantial federal interest in ensuring that actions taken in pursuance of the Management Act receive the uniformity of interpretation that a federal forum offers.").

37. Plaintiff's attempt to enforce the CSA raises a substantial federal question even though the CSA does not provide for a private right of action.  In 2005, in *Grable*, the Supreme

Court held that lack of a federal cause of action does *not* foreclose federal question jurisdiction. The Court stated that applying *Merrell Dow* too narrowly would both "overturn[ ] decades of precedent," and "convert[ ] a federal cause of action from a sufficient condition for federal question jurisdiction into a necessary one." *Grable*, 545 U.S. at 317; *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL 1752954, at *4-*5 (D. Or. May 2, 2017) (state law claims based on violations of Cable Communications Policy Act raise substantial federal questions and satisfy *Grable* even though no private right of action exists under Act).

38.     Removal is particularly appropriate here because Plaintiffs' action is but one of more than 1,300 similar actions nationwide, of which over 1,000 are pending in the MDL in the Northern District of Ohio.  Indeed, opioid use and addiction is not merely a local issue, and Plaintiffs acknowledge that many of their allegations are "national in scope." *See, e.g.*, Compl. ¶¶ 345, 433, 638.  The MDL judge, Judge Polster, is attempting to achieve a national solution to a nationwide problem.[6]

39.     *Fourth*, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts exclusively hear challenges to DEA authority to enforce the CSA against distributors, and litigating this case in a state court runs the risk of the state court applying federal requirements inconsistently with the manner in which the federal agency tasked with enforcing the CSA—the DEA—applies them.  Federal jurisdiction is further warranted given the hundreds of

---

[6] Less than two months after the MDL was created, Judge Polster convened the first day-long settlement conference on January 31, 2018.  Judge Polster required attendance by party representatives and their insurers and invited attendance by attorneys general and representatives of the DEA and FDA.

similar actions pending in the MDL, which "[i]n the aggregate . . . have the potential to substantially influence the scope and success" of the federal statutory scheme to regulate controlled substances. *Evergreen Square of Cudahy*, 776 F.3d at 468. "Accordingly, the federal government has a strong interest in these issues being decided according to uniform principles[,]" which "will best be achieved by allowing suit in federal courts." *Id.*

40.     In summary, removal of this action is appropriate because Plaintiffs' "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g.*, *Evergreen Square of Cudahy*, 776 F.3d at 467-68 (state law claims alleging defendants' breached a contract for Section 8 housing by failing to approve rent increases satisfy *Grable*, raising issues that the "federal government has a strong interest in . . . being decided according to uniform principles."); *New York ex rel. Jacobson*, 824 F.3d at 315-18 (state law claims based on defendant's alleged violation of Internal Revenue Code satisfy *Grable*); *NASDAQ,* 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal question removal jurisdiction").

41.     To the extent that the Court determines that some, but not all, of Plaintiffs' claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Manufacturer Defendants, the Distributor Defendants, and the Individual Defendants under the doctrine of supplemental jurisdiction.  28 U.S.C. § 1367(a).

## OTHER REMOVAL ISSUES

42.     Pursuant to 28 U.S.C. § 1446(b)(2)(A), all defendants that have been properly joined and served in this action consent to removal.

43.     The following Defendants have been served in this action and consent to removal, as indicated by their counsel's signatures below:  Purdue Pharma L.P.; Purdue Pharma, Inc.; The Purdue Frederick Company, Inc.; Cephalon, Inc.; Johnson & Johnson; Janssen Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Ortho-McNeil-Janssen Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.; Actavis LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Insys Therapeutics, Inc.; Mallinckrodt LLC; Endo Health Solutions Inc.; Endo Pharmaceuticals Inc.; Cardinal Health Inc; and AmerisourceBergen Corporation[7].

44.     The following Defendants have not been properly served, and thus their consent to removal is not required: Teva Pharmaceuticals USA, Inc.; Watson Laboratories, Inc.; Allergan plc f/k/a Actavis plc; Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.; Perry Fine; Scott Fishman; and Lynn Webster.  Nevertheless, they consent

---

[7] By consenting to removal, AmerisourceBergen Corporation does not concede that it is a proper party to this action.

to removal.  The Defendants listed in this paragraph expressly reserve, and do not waive, all defenses related to service of process and personal jurisdiction.

45.       By filing this Notice of Removal, neither McKesson nor any other Defendant waives any defense that may be available to it, and Defendants expressly reserve all such defenses, including those related to personal jurisdiction and service of process.

46.       If any question arises as to propriety of removal to this Court, McKesson requests the opportunity to present a brief and oral argument in support of its position that this case has been properly removed.

47.       Pursuant to 28 U.S.C. § 1446(d), McKesson will promptly file a copy of this Notice of Removal with the clerk of the state court where the lawsuit has been pending and serve notice of the filing of this Notice of Removal on Plaintiff.

48.       McKesson reserves the right to amend or supplement this Notice.

WHEREFORE, McKesson removes this action, pending in the Eighth District Court of the State of Utah, Uintah County, Case No. 180800056, to this Court.

DATED this 23rd of July, 2018.

MARSHALL OLSON & HULL, PC

BY:     /s/ Trevor C. Lang
            ERIK A. OLSON
            TREVOR C. LANG

ATTORNEYS FOR DEFENDANT
MCKESSON CORPORATION

CONSENT FROM OTHER DEFENDANTS:

/s/ WHITNEY HULET KROGUE
KAMIE F. BROWN
KRISTINE M. LARSEN
WHITNEY HULET KROGUE
**RAY QUINNEY & NEBEKER P.C.**

ROBERT A. NICHOLAS
SHANNON E. MCCLURE
**REED SMITH LLP**

ALVIN L. EMCH
**JACKSON KELLY PLLC**

ATTORNEYS FOR DEFENDANT
AMERISOURCEBERGEN CORPORATION

/s/ D. MATTHEW MOSCON
D. MATTHEW MOSCON
**STOEL RIVES LLP**

ATTORNEY FOR DEFENDANT CARDINAL
HEALTH INC.

/s/ ELISABETH M. MCOMBER
ELISABETH M. MCOMBER
**SNELL & WILMER LLP**

SHEILA L. BIRNBAUM
MARK S. CHEFFO
HAYDEN A. COLEMAN
**DECHERT LLP**

ATTORNEYS FOR DEFENDANTS PURDUE
PHARMA L.P.; PURDUE PHARMA INC.;
AND THE PURDUE FREDERICK COMPANY, INC.

/s/ BRENT O. HATCH
BRENT O. HATCH
LARA A. SWENSEN
DILLON P. OLSON
**HATCH, JAMES, & DODGE, PC**

STEVEN A. REED
WENDY WEST FEINSTEIN
BRIAN ERCOLE
**MORGAN, LEWIS & BOCKIUS LLP**

ATTORNEYS FOR DEFENDANTS CEPHALON,
INC., TEVA PHARMACEUTICALS USA, INC.,
ACTAVIS LLC, ACTAVIS PHARMA, INC. F/K/A
WATSON PHARMA, INC., AND WATSON
LABORATORIES, INC.

/s/ Andrew G. Deiss
Andrew G. Deiss
Wesley D. Felix
Brenda Weinberg
**Deiss Law PC**

Charles C. Lifland
**O'Melveny & Myers LLP**

Attorneys for Defendants Johnson &
Johnson, Janssen Pharmaceuticals, Inc.,
Janssen Pharmaceutica, Inc. n/k/a
Janssen Pharmaceuticals,
Inc., and Ortho-McNeil-Janssen
Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc.

/s/ Perry S. Clegg
Perry S. Clegg
Matthew R. Lewis
Marcia Fuller Durkin
**Kunzler, PC**

John A. Freedman
**Arnold & Porter Kaye Scholer LLP**

Attorneys for Defendants Endo Health
Solutions Inc. and Endo
Pharmaceuticals Inc.

/s/ DONNA WELCH
DONNA WELCH, P.C.
MARTIN L. ROTH
TIMOTHY KNAPP
JENNIFER G. LEVY, P.C.
**KIRKLAND & ELLIS LLP**

ATTORNEYS FOR DEFENDANTS ALLERGAN PLC
F/K/A ACTAVIS PLC AND ACTAVIS, INC. F/K/A
WATSON PHARMACEUTICALS, INC.


/s/ J. RYAN MITCHELL
J. RYAN MITCHELL
**MITCHELL BARLOW & MANSFIELD, PC**

J. MATTHEW DONOHUE
JOSEPH L. FRANCO
**HOLLAND & KNIGHT LLP**

ATTORNEYS FOR DEFENDANT INSYS
THERAPEUTICS, INC.


/s/ GEOFFREY C. HASLAM
GEOFFREY C. HASLAM
TYLER V. SNOW
**CHRISTENSEN & JENSEN, PC**

ROCKY C. TSAI
JENNIFER PANTINA
**ROPES & GRAY LLP**

ATTORNEYS FOR DEFENDANT MALLINCKRODT
LLC


/s/ MARK A. NICKEL
MARK A. NICKEL
**GORDEN REES SCULLY MANSUKHANI LLP**

ATTORNEY FOR DEFENDANTS PERRY FINE,
SCOTT FISHMAN, AND LYNN WEBSTER

## CERTIFICATE OF SERVICE

I hereby certify that this 23rd day of July, 2018, I caused the foregoing **NOTICE OF REMOVAL** to be filed via the Court's electronic system, which electronically transmitted notice of such filing to all counsel of record, and was emailed and mailed via U.S. mail as follows:

COLIN P. KING
CKING@DKOWLAW.COM
MICHAEL A. WOREL
MWOREL@DKOWLAW.COM
**DEWSNUP KING OLSEN WOREL HAVAS MORTENSEN**
36 SOUTH STATE ST., STE. 2400
SALT LAKE CITY, UTAH 84111

DONALD J. WINDER
WINDER@MCGIPLAW.COM
EDGAR R. CATAXINOS
CATAXINOUS@MCGIPLAW.COM
JAMES E. MAGLEBY
MAGLEBY@MCGIPLAW.COM
MATTHEW B. MCCUNE
MCCUNE@MCGIPLAW.COM
**MAGLEGY CATAXINOS & GREENWOOD**
170 SOUTH MAIN ST., STE. 1100
SALT LAKE CITY, UTAH 84101

G. MARK THOMAS
MARK@UINTAHCOUNTYATTORNEY.ORG
JONATHAN STEARMER
JONATHAN@UINTAHCOUNTYATTONEY.ORG
**UINTAH COUNTY ATTORNEY**
641 EAST 300 SOUTH, #200
VERNAL, UTAH 84078

NIEL H. LUND
NLUND@DAGGETTCOUNTY.ORG
**DAGGETT COUNTY ATTORNEY**
95 NORTH 100 WEST
MANILA, UTAH 84046

Tyler Allred
TALLRED@DUCHESNE.UTAH.GOV
Stephen D. Foote
SFOOTE@DUCHESNE.UTAH.GOV
**Duchesne County Attorney**
734 North Center Street
Duchesne, Utah 84021

/s/ Trevor C. Lang