# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UINTAH COUNTY, UTAH; DUCHESNE COUNTY, UTAH; DAGGETT COUNTY, UTAH; and TRI-COUNTY HEALTH DEPARTMENT,<br><br>Plaintiffs,<br><br>v.<br><br>PURDUE PHARMA, L.P., et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO REMAND**<br><br>Case No. 2:18-cv-00585-RJS<br><br>Judge Robert J. Shelby |

Before the court is Plaintiffs Uintah County, Utah; Duchesne County, Utah; Daggett County, Utah; and Tri-County Health Department's Motion to Remand[1] this action to the Eighth District Court of the District of the State of Utah, Uintah County. Defendant McKesson Corporation recently removed this action, arguing the court has federal question subject matter jurisdiction over Plaintiffs' claims against a group of Defendants, and may exercise supplemental jurisdiction over any remaining claims under 28 U.S.C. § 1367. For the reasons discussed below, the court concludes it lacks federal question subject matter jurisdiction. Plaintiffs' Motion is thus GRANTED. The action shall be REMANDED.

## I.     Background

Plaintiffs filed this action in Utah's Eighth District Court, Uintah County, on June 7, 2018, asserting in a 252-page Complaint eight state-law-based causes of action against numerous Defendants who manufacture, distribute, or are otherwise connected to the opioid pharmaceutical

---

[1] Dkt. 6.

1

industry.[2] Plaintiffs claim the Defendants concealed for their own financial gain the risks of addiction and attendant harm prescription opioids present, all while promoting ever-increasing consumer use. Plaintiffs assert against the Defendants claims for: (1) Violation of the Utah Consumer Sales Practices Act; (2) Public Nuisance; (3) Fraud; (4) Strict Products Liability; (5) Negligence; (6) Negligent Marketing; (7) Civil Conspiracy; and (8) Unjust Enrichment.[3]

On June 22, 2018, Plaintiffs served the Complaint on Defendant McKesson Corporation—an opioid distributor. On July 23, 2018, McKesson timely removed the action to this court, citing as grounds federal question subject matter jurisdiction and possible supplemental jurisdiction.[4] All other Defendants appearing have consented to the removal.

McKesson contends in its Notice of Removal that Plaintiffs have pled in their Complaint that "alleged violations of federal law form the basis for [their] claims"[5] against the opioid distributor Defendants (Distributors). McKesson's argument stems from allegations set forth in a handful of paragraphs in the Complaint's factual background, including that the Distributors:

- had a duty to notice and report suspicious opioid orders to governing authorities, "including the DEA and the Utah Department of Health;"[6]

- "knew or should have known that they were supplying vast amounts of dangerous drugs in Uintah, Duchesne, and Daggett County that were already facing abuse, diversion, misuse, and other problems . . . [and] failed in their duty to take any action to prevent or reduce the distribution of these drugs;"[7]

---

[2] Utah Case No. 180800056.
[3] Dkt. 2-2 ¶¶ 744-817.
[4] Dkt. 2.
[5] *Id.* at 3 ¶ 8.
[6] Dkt. 2-2 ¶ 711.
[7] *Id.* ¶¶ 712-13.

- had a duty to "inspect, report, or otherwise limit" suspicious opioid orders;[8]

- breached their duty when they "fail[ed] to submit suspicious order reports"[9] and "shipped millions of doses of highly addictive controlled opioid pain killers into Uintah, Duchesne, and Daggett County" despite the fact that many such orders should either have been stopped or investigated as suspicious orders.[10]

- were fined and penalized by government authorities for actions in filling suspicious orders;[11] and

- received briefings from the DEA concerning their obligations under federal law.[12]

McKesson argues the above-referenced duties imposed on Distributors governing "suspicious" orders arise solely from federal law—the Controlled Substances Act[13] and its implementing regulations. Although the statute is not cited in the Complaint paragraphs McKesson relies upon,[14] McKesson contends that Plaintiffs necessarily "plead that alleged violations of federal law form the basis for [their] claims."[15] In short, while state law is the

---

[8] *Id.* ¶ 714-15.

[9] *Id.* ¶ 716.

[10] *Id.* ¶¶ 726-27.

[11] *Id.* ¶¶ 717-18, 724, and 741.

[12] *Id.* ¶¶ 739-40.

[13] 21 U.S.C. §§ 801 *et seq.*

[14] Plaintiffs point out that they refer to the CSA three times in their Complaint: in footnote 4 on page 3, and at paragraphs 658 and 741. (Dkt. 6 at 11 n.1 (using court's pagination)).

[15] Dkt. 2 at 3 ¶ 8.

express basis for all of Plaintiffs' claims,[16] McKesson argues the Complaint raises a "substantial question of federal law sufficient to warrant removal . . . ."[17]

Upon removal, the case was initially assigned to a Magistrate Judge. Plaintiffs promptly filed a Motion to Remand on July 26, 2018,[18] arguing federal question jurisdiction is lacking where their claims are neither rooted in federal law nor necessarily raise a disputed and substantial issue of federal law, and that in any event, the court should apply abstention doctrines to decline to hear this case.

The next day, on July 27, 2018, Plaintiffs filed a Request for an Expedited Conference with the Court, seeking a hearing that same afternoon.[19] Plaintiffs explained that they had just received "Notice of Potential Tag-along Actions, re: MDL No. 2804," informing them that the action might be transferred into existing multidistrict litigation (MDL) pending before U.S. District Judge Dan Polster in the Northern District of Ohio. Judge Polster had in February 2018 issued an order placing a moratorium on all filings in the MDL—including motions to remand.[20] Plaintiffs urgently sought a hearing to discuss the potential transfer due to an apparent concern that transfer of this case to the MDL might be imminent, and that resolution of their pending Motion to Remand might be indefinitely delayed.[21]

---

[16] While McKesson argues Plaintiffs rely solely on federal law, it also acknowledges in its Notice of Removal and subsequent briefing that Plaintiffs cite "Utah laws [and] regulations" in their Complaint to show the Defendants owed duties. But, McKesson contends those cited state law bases for duties will not succeed on their merits. *See* Notice of Removal (Dkt. 2) n. 4 (noting "even when Plaintiffs purport to rely on state law, the only source of the alleged duties is the federal CSA.").

[17] Dkt. 2 at 5 ¶ 20.

[18] Dkt. 6.

[19] Dkt. 7.

[20] Dkt. 6-1.

[21] McKesson states in its Notice of Removal that it removed this action with the intent of tagging it for transfer into the MDL. (Dkt. 2 at 3 ¶ 10).

After Plaintiffs filed a Request for an Expedited Conference, the action was reassigned to another District Court Judge on Friday, July 27, 2018,[22] and then was reassigned to the undersigned on July 30, 2018.[23] In the evening of July 30, 2018, three Defendants—McKesson Corporation; Cardinal Health, Inc.; and AmerisourceBergen Corporation—filed a Joint Motion to Stay[24] all proceedings in this action pending a determination of whether this case would be transferred to the pending MDL.

In view of Plaintiffs' urgent view of the case, the court on July 31, 2018 ordered expedited briefing on the Motion to Remand.[25] That same day, the court denied the Motion to Stay.[26]

On August 1, 2018, the Judicial Panel on Multidistrict Litigation issued a Conditional Transfer Order directing that this action along with several others be transferred to the MDL before Judge Polster. But the JPML stayed its Order for seven days, until August 8, 2018, to permit any parties to give notice of opposition to the transfer.[27] And if any party does give such notice, "the stay will be continued until further order of the Panel."[28]

On August 2, 2018, McKesson filed a Memorandum in Opposition[29] to the Motion to Remand. Plaintiffs submitted a Reply in support of their Motion on August 3, 2018.[30]

---

[22] Dkts. 8, 10, 11.

[23] Dkt. 11.

[24] Dkt. 14.

[25] Dkt. 16. At the time the undersigned received this case, it was already presiding over a related case, Case No. 1:18-cv-00089, *Weber County, et al. v. Purdue Pharma, L.P.*

[26] Dkt. 17.

[27] Dkt. 2129 in MDL No. 2804.

[28] *Id.* at 1.

[29] Dkt. 18.

[30] Dkt. 19.

## II. Legal Principles

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."[31] There generally exists a presumption "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."[32] Under these principles, McKesson bears the burden to show the propriety of removal by establishing that this court enjoys subject matter jurisdiction over the action.

The removal statute, 28 U.S.C. § 1441, provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants . . . ." McKesson contends the court has original jurisdiction over this action because it presents a federal question.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Although the constitutional meaning of 'arising under' may extend to all cases in which a federal question is 'an ingredient' of the action," the Supreme Court has "long construed the statutory grant of federal question jurisdiction as conferring a more limited power."[33]

The Supreme Court instructs that the "question of whether a claim 'arises under' federal law must be determined by reference to the 'well-pleaded complaint.'"[34] Under this rule, a suit arises under federal law when the "plaintiff's statement of his own cause of action"—and

---

[31] *Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc.,* 693 F.3d 1195, 1201 (10th Cir. 2012) (citations omitted).

[32] *Id.* (citations omitted).

[33] *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807 (1986) (citations omitted).

[34] *Id.* at 808 (citations omitted).

6

ignoring "potential defenses"—shows that it is based on federal law."[35] "This rule makes the plaintiff the master of the claim."[36] Plaintiffs can generally "guarantee an action will be heard in state court" by "omitting federal claims from a complaint," because "[a] defense that raises a federal question is inadequate to confer federal jurisdiction."[37]

The "vast majority" of cases in which parties establish federal question subject matter "are those in which federal law creates the cause of action."[38] But a case may also arise under federal law where there exists an 'embedded' federal issue if the "'plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'"[39]

To establish federal question jurisdiction in this way, the proponent must show that a state law claim "necessarily raise[s]" a substantial federal issue that is "actually disputed," and "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."[40] The Supreme Court has cautioned, however, that this is a "small and special"[41] and "slim"[42] category of cases; and "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."[43] Likewise, the Tenth Circuit instructs that this "branch of federal question jurisdiction is exceedingly narrow. . . ."[44]

---

[35] *Devon*, 693 F.3d at 1202 (citations omitted).

[36] *Id.* (citations omitted).

[37] *Merrell Dow,* 478 U.S. at 808.

[38] *Id.* at 809.

[39] *Empire Healthchoice Assur., Inc., v. McVeigh*, 547 U.S. 677, 690 (2006) (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27-28 (1983)).

[40] *Grable & Sons Metal Products v. Darue Engineering & Mfg.,* 545 U.S. 308, 314 (2005).

[41] *Empire Healthchoice,* 547 U.S. at 699.

[42] *Id.* at 701.

[43] *Merrell Dow*, 478 U.S. at 813 (citations omitted).

[44] *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012).

7

To illustrate, the Supreme Court in *Merrell Dow Pharmaceuticals, Inc. v. Thompson* found no federal question subject matter jurisdiction over a state law tort claim asserted against a drug manufacturer, despite the fact that the plaintiffs in the consolidated case had claimed that the drug "was 'misbranded' in violation of the Federal Food, Drug, and Cosmetic Act (FDCA) . . . [and] that the violation 'in the promotion' of [the drug] Bendectin" created a "rebuttable presumption of negligence" and "directly and proximately caused the injuries" alleged.[45] The Court emphasized that the FDCA provided no private right of action—important evidence that Congress did not intend for federal courts to "nevertheless exercise federal-question jurisdiction and provide remedies for that federal statute;"[46] and that "the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."[47] Thus, after disposing of the defendant's other arguments, the court held there was no federal question subject matter jurisdiction over the plaintiffs' "complaint alleging a violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation . . . ."[48]

In contrast, the Supreme Court in *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*[49] found federal question jurisdiction over a state law quiet title claim. The case arose after the Internal Revenue Service seized the plaintiff's property to a satisfy tax delinquency. For the seizure to be proper, federal law required the IRS to provide adequate notice. The IRS had provided notice by certified mail. After the seizure, the IRS sold the

---

[45] *Merrell Dow*, 478 U.S. at 805-06.

[46] *Id.* at 813.

[47] *Id.* at 816.

[48] 478 U.S. 804 (1986) (quoting 28 U.S.C. § 1331).

[49] 545 U.S. 308.

property to the defendant.  Plaintiff eventually brought a state law quiet title action in state court against the defendant, contending the sale was invalid because the IRS had failed to comply with the federal notice law requirements.  The plaintiff argued that personal service—not simply certified mail—was required but had not been effectuated.[50]  The defendant removed the action to federal court, and the Sixth Circuit and Supreme Court each affirmed the district court's denial of plaintiff's motion to remand.

In reaching that conclusion, the Supreme Court explained that the plaintiff's quiet title claim was premised on the "essential element" of an alleged "failure by the IRS to give it adequate notice, as defined by federal law."[51]  The federal form of notice issue was "the only legal or factual issue contested in the case," and was "an important issue of federal law" where the "ability of the IRS to satisfy its claims . . . requires clear terms of notice."[52]  The court emphasized that "because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor."[53]

The *Grable* Court noted its decision was not at variance with *Merrell Dow*, despite the fact that in both cases, the federal statute at issue did not create a private right of action.  That common fact was not dispositive to either case.  The *Merrell Dow* Court had considered that fact highly relevant to the determination of whether the federal issue there was substantial and whether federal court consideration would upset a balance struck by Congress, in addition to other practical considerations that were very different in *Merrell Dow* compared to *Grable*:

---

[50] *Id.* at 310-11.

[51] *Id.* at 314-15.

[52] *Id.* at 315.

[53] *Id.*

9

> The [*Merrell Dow*] Court saw the missing cause of action not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues. For if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases.[54]

The *Grable* Court explained that in contrast, though there was no private right of action provided in the federal IRS notice statute, "it is the rare state quiet title action that involves contested issues of federal law."[55] Thus, federal jurisdiction over such actions "would not materially affect, or threaten to affect, the normal currents of litigation."[56]

### III. Discussion

Under the foregoing guidance, the court evaluates whether it enjoys federal question subject matter jurisdiction over the claims against the Distributors set forth in Plaintiffs' Complaint. Plaintiffs assert no claims in which federal law creates the cause of action. McKesson argues only that federal subject matter jurisdiction exists because the claims against the Distributors raise 'substantial questions' of federal law involving the Controlled Substances Act (CSA). Below, the court considers whether McKesson has established that a substantial federal issue is necessarily raised, actually disputed, and amenable to resolution in this court without disrupting congressional intent and balancing of judicial responsibilities.

#### A. Plaintiffs' Complaint does not necessarily raise substantial federal issues.

The allegations in Plaintiffs' Complaint undoubtedly reference federal laws and some Defendants' breaches of those laws. But Plaintiffs assert only state law claims, and provide

---

[54] *Id.* at 318.

[55] *Id.* at 319.

[56] *Id.*

10

bases for the claims which do not arise out of or necessarily depend on an interpretation of a disputed CSA provision. Under these circumstances, the Complaint does not necessarily raise federal issues.[57]

First, Plaintiffs identify non-federal sources for the legal duties they claim the Distributors owe. These include Utah statutes referenced in the Complaint, as well as the common law.[58]

Indeed, the Distributors acknowledge in their briefing the claimed state law bases for Plaintiffs' claims.[59] But, they contend Plaintiffs' non-federal law sources for duties will ultimately fail because none truly create the duties alleged.[60] The validity of the alleged independent sources of the Distributors' duties is not an issue for this court. At this stage, involving subject matter jurisdiction determinations, Plaintiffs are the masters of their claims—whether eventually successful on the merits or not. Thus, even assuming the court could discern that those independent bases for claimed duties would ultimately fail—which it cannot—this conclusion would not preclude a finding that federal subject matter jurisdiction is lacking and that the case demands remand.[61]

---

[57] In *Devon*, the Tenth Circuit noted in citing cases where federal question jurisdiction had arisen that it was in those cases "*necessary* for the court to interpret a disputed issue of federal-law in order for the plaintiffs to establish their state law claims." 693 F.3d at 1211 (citing *Grable*, 545 U.S. at 315) (other citations omitted) (emphasis in original). But a "possibility that a federal issue might arise relative" to the claims "is not enough" to establish jurisdiction. *Id.*

[58] *See* discussion in Dkt. 19 at pages 5-10 (using the court's pagination).

[59] Dkt. 18 at 9 n. 3 (using court's pagination).

[60] *Id.*

[61] The Tenth Circuit has determined that the obligation to remand pursuant to 28 U.S.C. § 1447 where the court lacks subject matter jurisdiction applies even in cases where the remanded claims might be futile. *See Hill v. Vanderbilt Capital Advisors, LLC,* 702 F.3d 1220 (10th Cir. 2012) (noting that the Supreme Court has suggested that "§ 1447(c) mandates remand without a futility exception") (citing *International Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. (1991)); *Jepsen v. Texaco, Inc.,* 1995 WL 607630, *3 (10th Cir. Oct. 16, 1995) (rejecting futility argument in light of § 1447 and the *International Primate Prot. League* case; noting that "[t]o hold otherwise would require this court to speculate on an application of state law, an endeavor we decline.").

But even if Plaintiffs relied only on a breach of the federal CSA for a given state law claim against the Distributors to establish to their state law claims against the Distributors, the court likely still would not find the presence of a substantial issue of federal law. Doing otherwise, as McKesson urges, would seemingly flout *Merrell Dow*, in which the Supreme Court found no federal subject matter jurisdiction under analogous facts where plaintiffs directly claimed the defendant's alleged breach of a federal drug labeling statute established the defendant had been negligent per se and that negligence was the proximate cause of the injuries alleged in the consolidated cases. As with the CSA, the federal statute at issue in *Merrell Dow* provided no private right of action. If federal question subject matter jurisdiction was lacking there, it is certainly not established here, where Plaintiffs do not expressly rely on the CSA in stating their claims and offer in their papers that their claims are not directly based on the CSA.

The court concludes McKesson has not established that Plaintiffs' Complaint necessarily raises a federal issue.

**B.  McKesson does not identify any actually disputed substantial federal issues.**

The court next evaluates whether a substantial federal issue appears to be disputed. McKesson contends the parties will actually dispute substantial federal issues because Plaintiffs will be required to litigate the contours of any duty under the CSA, whether the Distributors' conduct amounted to a breach of that duty, whether the violations occurred in the proximity of the Plaintiff-Counties, during the statute of limitations, and in a way that cased the Plaintiffs harm.[62] But this litany ignores it is undisputed that Distributors have paid fines to the DEA regarding suspicious orders, and that the bulk of the other issues—where violations occurred, when they occurred, and whether they harmed Plaintiffs—likely will be determined under state

---

[62] Dkt. 18 at 11 (using court's pagination).

law, and almost certainly without even a reference to the CSA, which provides no private right of action. Perhaps most critically, though they claim the parties will "contest whether the Distributors violated the CSA"[63] McKesson fails to identify a specific provision in the CSA which will require interpretation or construction by any court, let alone a substantial and disputed statutory issue on which Plaintiffs' claims against it necessarily succeed or fail.

And this is in stark contrast to the issue presented in *Grable*—whether the federal law requiring the IRS to provide notice permitted notice via certified mail or required personal service. There, the parties disputed the interpretation of specific provision of federal law entirely dispositive of the *Grable* plaintiff's claim, where he had only received certified mail.

### C. The federal issues raised in Plaintiffs' Complaint are not substantial.

The court next considers whether McKesson has shown that federal issues raised in Plaintiffs' Complaint are "substantial," "look[ing] to the importance of the issue to the federal system as a whole."[64] In this analysis, "if a claim does not present 'a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous . . . cases,' but rather is 'fact-bound and situation-specific,' then federal question jurisdiction would generally be inappropriate."[65]

McKesson contends the CSA provides "the legitimate drug industry with a unified approach" to drug control, so litigation in a federal forum is "warranted" because Plaintiffs' action is but one of a thousand which might proceed in the pending federal MDL, offering a uniform construction of the CSA.[66] Undoubtedly, a uniform approach in a consolidated MDL

---

[63] *Id.* at 8 (using court's pagination).

[64] *Gunn v. Minton,* 568 U.S. 251, 260 (2013).

[65] *Becker v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 770 F.3d 944, 947-48 (10th Cir. 2014) (quoting *Empire Healthchoice,* 547 U.S. at 700-01).

[66] Dkt. 18 at 12-13 (using court's pagination).

may be beneficial to McKesson, a party in this action. But McKesson has not by these arguments explained why an interpretation of some provision of the CSA will affect the federal system as a whole—how the *government* might operate in response to such an interpretation.

And once again, this is in contrast to *Grable*, where the squarely-presented federal issue was the nature of notice the IRS was required to provide before seizing property. An answer to that question was of critical importance because it would have a clear effect on IRS actions in providing notice to delinquent taxpayers.[67] McKesson points to no such unresolved issue of law, the determination of which will assist the government in its actions.

McKesson also attaches to its Memorandum in Opposition to the Motion to Remand a Statement of Interest filed on March 1, 2018, by the United States Department of Justice in the MDL,[68] in which the United States requests thirty days to evaluate whether it will seek to participate in that action to assert claims for recovery. But the United States does not indicate in this statement what provision of the CSA requires federal interpretation to assist the government in its operations going forward. It indicates that the opioid epidemic is a "national health crisis" that has cost the government large sums of money, and cites the CSA and other federal statutes sources that might permit financial recovery and coordination of civil and criminal efforts. And, as Plaintiffs point out, though this Statement was filed over five months ago, the United States has taken no action to participate directly in the MDL.[69]

Finally, McKesson has not established that any requisite construction of the CSA presents a pure question of law that would govern in other cases. Its entire argument on this point

---

[67] Though not dispositive, it bears noting that Congress did not see fit to permit a private right of action under the CSA. *See Grable*, 545 U.S. at 318 (noting that absence of a federal private right of action is relevant but not dispositive to "the sensitive judgments about congressional intent that § 1331 requires.").

[68] Dkt. 18-1.

[69] Dkt. 19 at 11 (using court's pagination).

14

is conclusory, and the court cannot give it significant weight. McKesson simply states that the determination of issues "of the existence of duties arising under the CSA, the scope and the contour of any such duties that exist, and whether [their conduct] amounted to a breach of that duty" present "nearly pure issues of law that would necessarily have application to other federal cases," including the MDL.[70] This brief discussion is unpersuasive. Moreover, on their face, the issues McKesson recites appear "fact-bound" and "situation-specific," auguring against federal jurisdiction.

### D. Federal and state balancing of judicial responsibilities is served by declining federal question jurisdiction in this action.

In the federal question jurisdiction analysis, the court must lastly determine whether federal courts may resolve the issues raised in Plaintiffs' Complaint "without disturbing any congressionally-approved balance of federal and state judicial responsibilities."[71] The *Grable* Court explained that "even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331."[72] Thus, there must be "an assessment of any disruptive potent in exercising federal jurisdiction."[73]

The *Grable* Court noted that the finding of federal question jurisdiction over a quiet title claim depending on a disputed provision of federal law concerning IRS notice would not disrupt

---

[70] Dkt. 18 at 14 (using court's pagination) (citations omitted).

[71] *Grable*, 545 U.S. at 314.

[72] *Id.*

[73] *Id.*

15

the "federal-state division of labor" because only a rare state quiet title case would raise a contested matter of federal law; thus the effect of finding jurisdiction would be "microscopic."[74] But that court acknowledged that the opposite would have been true had federal jurisdiction been found in *Merrell Dow*.

In *Merrell Dow,* the combination of a lack of private right of action under the relevant drug labeling statute (FDCA), and the fact that the statute did not preempt state causes of action was an "important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331."[75] The lack of a private right of action was a "missing welcome mat" to federal court which was required under the specific facts of that case—where the alleged breach of a federal law was being used in the context of "garden variety state tort" claims.[76] Exercising federal question jurisdiction "over state claims resting on federal mislabeling or other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts."[77] Thus, the *Merrell Dow* Court staved off a "horde of original filings and removal cases" under those circumstances by closing the door to federal question jurisdiction.

The court finds the *Merrell Dow* analysis compellingly applicable. Even if there were a disputed substantial federal question within Plaintiffs' state law claims, the balancing of federal and state judicial responsibilities weighs in favor of declining federal jurisdiction. The parties do not dispute that the CSA does not provide a private right of action and has not preempted the entire field it covers. The Complaint's brief discussion of the Distributors' alleged violations of the CSA—whether as mere factual context, or evidence of their breach of a duty (as the *Merrell*

---

[74] *Id.* at 315.

[75] *Id.* at 318

[76] *Id.*

[77] *Id.* at 319.

16

*Dow* plaintiffs had used the FDCA)—cannot give rise to federal jurisdiction in an action involving only state law tort and statutory claims, particularly where doing so would almost certainly give rise to a flood of federal court original and removed filings.[78]

McKesson's only argument to the contrary is that because federal courts are the exclusive venue for "challenges to DEA authority" to enforce the CSA against distributors, including disputes involving injunctions, "federal courts already are the exclusive forum for determining the scope of restraints on Distributors under the federal CSA."[79] It is unclear to the court how McKesson's argument concerning actions against the federal government applies in the context of this non-agency action, not brought directly pursuant to a CSA provision. In any event, the argument is unpersuasive.

### E. Abstention doctrines.

In view of the foregoing, it is unnecessary to discuss Plaintiffs' arguments concerning abstention.

### IV. Conclusion and Order.

For the reasons discussed, the court concludes it lacks federal subject matter jurisdiction over any claims in this action. The case therefore must be remanded.[80]

Accordingly, Plaintiffs' Motion to Remand is GRANTED. This action is REMANDED to Utah's Eighth District Court, Uintah County. The clerk of court is directed to CLOSE this case.

---

[78] *See id.* at 318-19 (noting that the violation of federal law is often used by plaintiffs asserting state law tort claims as evidence of negligence per se) (citations omitted).

[79] Dkt. 18 at 15 (using the court's pagination).

[80] 28 U.S.C. § 1447(c) instructs that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

SO ORDERED this 7th day of August 2018.

BY THE COURT:

_____
DISTRICT JUDGE ROBERT J. SHELBY